Filed 12/8/21  P. v. Evans CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C088230 |
| v. | (Super. Ct. No. 17FE010141) |
| JARED DAVID EVANS, | |
| Defendant and Appellant. | |

Defendant Jared David Evans, a paramedic, grabbed and exposed the breast of a patient (Doe) during transit in an ambulance.  He was convicted of felony assault under color of authority (Pen. Code, § 149 -- count one)[1] and misdemeanor sexual battery (§ 243.4, subd. (e)(1) -- count two).  The trial court placed defendant on probation for five years, with a jail-term condition, for the felony assault conviction, and sentenced defendant to a jail term for the misdemeanor sexual battery.  The trial court also ordered

---

[1] Undesignated statutory references are to the Penal Code.

1

defendant to register as a sex offender for 10 years based on the sexual battery conviction.

After defendant filed his appeal, the Legislature amended some of the applicable statutes. In supplemental briefing, defendant argued he was entitled to a reduction of his probationary term to two years under the amended statute (§ 1203.1) and that the duration of his sex offender registration is now governed by the amended version of section 290. This court granted defendant's unopposed motion for a limited remand to allow the trial court to address issues related to the statutory changes. The trial court clarified that no probation term was imposed for the misdemeanor conviction and that the misdemeanor term was stayed under section 654, not imposed concurrently.[2] Also, the five-year probation term for the felony conviction was reduced by law to two years, and defendant was deemed to have completed the probationary term on October 5, 2020. (See § 1203.1.) The trial court further noted that the period of time defendant would be required to register as a sex offender would be determined by the Department of Justice under an amendment to section 290. Because the contentions asserted in defendant's supplemental brief were resolved in his favor on limited remand, we do not address them here.

In his appellant's opening brief, defendant argued (1) the trial court erred in denying his motion to dismiss the charges against him or, in the alternative, to give a jury instruction, because the detective investigating the case destroyed a drawing the detective made in the course of the investigation; (2) the trial court abused its discretion in excluding evidence that a witness showed other firefighters nude images of the witness's

---

[2] In the Respondent's brief on appeal, the Attorney General argued the trial court should have stayed the sentence for sexual battery under section 654 rather than imposing it concurrently. We need not address the issue because the trial court clarified on limited remand that it stayed the misdemeanor term.

2

girlfriend; (3) the trial court abused its discretion in admitting statements the witness made to his girlfriend about the incident in the ambulance as prior consistent statements; (4) the evidence was insufficient to support the conviction for sexual battery because the touching was not for the purpose of sexual arousal, sexual gratification, or sexual abuse; (5) the trial court erred in ordering sex offender registration; and (6) we must direct correction of the written probation order to conform to the oral pronouncement of sentence.

We conclude (1) the trial court properly denied defendant's motion concerning the destruction of evidence; (2) the trial court did not abuse its discretion by excluding the evidence that the witness showed other firefighters nude images of the witness's girlfriend; (3) the trial court did not abuse its discretion in admitting the prior consistent statements; (4) the evidence was sufficient to support the conviction for sexual battery; (5) defendant now appears to agree that sex offender registration is subject to section 290, as amended, as the trial court noted on limited remand; and (6) the written probation order must be corrected and amended to conform to the oral pronouncement of sentence and the clarifications and changes articulated by the trial court on limited remand.

We will affirm the judgment.

BACKGROUND

Defendant was a firefighter and paramedic with the City of Sacramento. He was also a preceptor for an intern, Chad Morris. A preceptor supervises and evaluates an intern during on-the-job training.

Doe suffered from recurrent seizures. On April 1, 2017, she had a seizure. Defendant and Morris responded to an emergency call and found Doe unconscious and lying on the floor. As they put her on a gurney and into the ambulance, she was not responsive to what they were doing. On the ride to the hospital, Morris sat on a bench at Doe's side, and defendant sat in a seat behind her. She was lying on her back, with her head slightly inclined. Morris was taking vital signs and inserting an IV for medication.

3

While Morris was busy doing this, defendant said, "Come take a look," while gesturing to Doe's breasts. Morris responded, "That's all right," and defendant said, "Don't be a fucking pussy." Morris said, "Nah, I'm good." Defendant then reached into Doe's shirt. He removed her breast from the shirt and said, "Those are some big-ass nipples." After about five seconds, defendant returned Doe's breast to her shirt as Morris continued to render medical care. Defendant laughed and said, "Sorry bro. I had to do it."

Even though she was unable to talk or open her eyes, Doe could hear and feel what was going on around her. In the ambulance, she knew there was a man to her side and one behind her, and she heard the one behind her saying she had "big tits." She felt a hand go inside her shirt and touch her left breast. She also heard the man behind her say, "I just had to." When the ambulance arrived at the hospital, the question was asked, "What's her age?" When one of the men said "19," the other one said, "At least she was legal."

Morris did not immediately report the incident because he was afraid of failing his internship and ruining defendant's career. After the incident, however, defendant began to give Morris negative evaluations and had Morris take some time off to change his attitude. Eventually, Morris told his internship coordinator about the incident.

An investigation was opened into the incident, and Detective Eric Schneider talked to Doe. During that interview, she said she believed it was the male sitting next to her that had touched her breast. Detective Schneider also interviewed defendant, and defendant denied anyone touched Doe's breast.

DISCUSSION

I

Defendant contends the trial court erred by denying his motion to dismiss the charges against him or, in the alternative, to give a jury instruction under *California v. Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413] (*Trombetta*) because the detective

investigating the case destroyed a drawing the detective made in the course of the investigation.

In criminal trials, defendants have a due process right to the preservation of exculpatory evidence. (*Trombetta, supra,* 467 U.S. at pp. 488-489 [81 L.Ed.2d at pp. 421-422]; *Arizona v. Youngblood* (1988) 488 U.S. 51, 58 [102 L.Ed.2d 281, 289-290] (*Youngblood*).) "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality [citation], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*Trombetta,* at pp. 488-489, fn. omitted.) In *Youngblood*, the court held that, if evidence is merely potentially useful, bad faith destruction must also be established. (*Youngblood,* at p. 58.) We review the denial of a *Trombetta* motion for substantial evidence. (*People v. Duff* (2014) 58 Cal.4th 527, 549.)

During the ambulance ride, Morris was seated to the left of Doe and defendant was seated behind Doe. Later, Detective Schneider interviewed Doe. During the interview, Detective Schneider drew a rough diagram of the inside of the ambulance, including the seat positions of Morris and defendant. Pointing to the diagram, Doe indicated that she thought the person seated to her side was the one who touched her breast. Detective Schneider testified at the preliminary hearing that he no longer had the rough diagram because he had destroyed it.

Defendant made a *Trombetta* motion before trial. The trial court denied the motion because the defense had comparable evidence that Doe indicated in the interview that she thought the person who touched her was seated to her side. The interview of Doe was recorded by video and memorialized in the detective's report, and both Doe and the

5

detective would testify at trial. The diagram was destroyed in good faith because the detective included the relevant information in his report.

Substantial evidence supports the trial court's determination. The video of Doe's interview and the testimony of both Doe and Detective Schneider were available to the defense to establish that Doe indicated in the interview that she thought the person seated next to her was the one who touched her breast. Detective Schneider destroyed the diagram after preparing a report of the interview. The diagram would not have contributed materially to the evidence available at trial.

Defendant claims there was no evidence comparable to the diagram drawn by Detective Schneider and that the destruction of the diagram was in bad faith.[3] Neither claim has merit.

Defendant argues there was no evidence comparable to Detective Schneider's diagram because the video of the interview does not show the details of the diagram and there is no assurance that having the detective draw a new diagram at trial to show the jury what Doe pointed to would reflect what was in the diagram. Defendant overstates the significance of the diagram because, as the trial court noted, the video of the interview and Detective Schneider's report both reflected what Doe told Detective Schneider about the position of the person who touched her breast. The diagram therefore was not necessary to show what Doe indicated during the interview.

Defendant also argues the destruction was in bad faith. In support, he reasons "the diagram was undesirable to the detective because it was used to identify someone who

_____

[3] In his brief, defendant recites Doe's trial testimony that the person behind her touched her breast and her being unsure about what she said in the interview with Detective Schneider. Defendant also recites Detective Schneider's trial testimony about the interview. But in reviewing the trial court's ruling on the motion, we consider only what the trial court knew at the time of its ruling. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 243.)

was not the designated suspect."  He declares:  "The destruction of the diagram itself implies bad faith."  However, the evidence was sufficient for the trial court to conclude that Detective Schneider destroyed the diagram because the relevant information was contained in the video of the interview and in the detective's report.

The trial court did not err by denying the *Trombetta* motion.

II

Before trial, the prosecutor filed a motion to exclude any defense evidence that Morris had shown nude images of his girlfriend to others at the fire station.  The motion was based on relevance (Evid. Code, § 210) and the prejudicial effect of the evidence (Evid. Code, § 352).  The defense opposed the motion, stating that the evidence would also show that Morris was "giddy and uncomfortable when talking about female and private parts and STDs in the back of the ambulance."  The defense argued the evidence would also establish Morris's lack of respect for women.  The defense further argued the evidence went to Morris's credibility because Morris claimed to be an "outstanding firefighter" and an "altruistic person."  The trial court concluded the evidence was not relevant and excluded it.

Among other things, defendant argues on appeal that the display of the nude images went to Morris's intent and attitude toward women.  The argument focuses on admissibility based on intent under Evidence Code section 1101, subdivision (b).  But defendant did not argue in the trial court that the evidence was relevant to Morris's intent. He only argued Morris was immature about and lacked respect for women and, therefore, his claim to be an outstanding firefighter lacked credibility.  Under the circumstances, defendant forfeited consideration on appeal of admissibility based on intent.  (See *People v. Partida* (2005) 37 Cal.4th 428, 433-434 (*Partida*) [evidentiary claim not presented in trial court is forfeited on appeal].)

Defendant also argues the evidence was admissible "because Morris claimed he ignored [defendant's] comments, focusing on patient care--i.e., he claims he was acting

7

appropriately as a paramedic should. Evidence of Morris's display of nude images would tend to show that he was not acting appropriately and had the same intent and attitude when he showed the images to firefighters as he did when in the back of the ambulance with Doe." Again, this argument was not presented in the trial court and is therefore forfeited. (*Partida, supra*, 37 Cal.4th at pp. 433-434.)

Although we nevertheless understand the gist of defendant's arguments regarding the evidence and are not unsympathetic, the trial court did not abuse its discretion in making its evidentiary determination.

III

Defendant next contends the trial court abused its discretion by admitting statements Morris made to his girlfriend about the incident in the ambulance as prior consistent statements.

Evidence Code section 1236 provides: "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement is consistent with [the witness's] testimony at the hearing and is offered in compliance with [Evidence Code] Section 791." Thus, "[t]o be admissible as an exception to the hearsay rule, a prior consistent statement must be offered (1) after an inconsistent statement is admitted to attack the testifying witness's credibility, where the consistent statement was made before the inconsistent statement, or (2) when there is an express or implied charge that the witness's testimony recently was fabricated or influenced by bias or improper motive, and the statement was made prior to the fabrication, bias, or improper motive." (*People v. Riccardi* (2012) 54 Cal.4th 758, 802, disapproved on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) A "previous statement made by a witness is admissible under the prior consistent statement exception to the hearsay rule if there has been an express or implied charge that the witness's testimony is recently fabricated and the prior consistent statement was made before the motive for fabrication is alleged to have arisen." (*People v. Crew* (2003) 31 Cal.4th 822, 843.)

8

Here, the prosecutor asked Morris's girlfriend, R.B.: "At some point after April 1st[,] 2017, when [Morris] came home from work, did he tell you about an incident that occurred in an ambulance?" Defense counsel objected based on hearsay, but the trial court overruled the objection, stating that it was a prior consistent statement. R.B. testified that Morris told her defendant had touched Doe's breast and that he was conflicted about reporting it.

The prior consistent statement exception to the hearsay rule is applicable here because the defense argued Morris fabricated the story after defendant gave Morris negative evaluations, starting on April 6, 2017, five days after the incident, and told Morris to take some time off to change his attitude. The trial court noted: "It appears Mr. Morris made this statement when he came off shift when this incident first allegedly took place. [¶] Mr. Morris was not given -- was not relieved of two shifts by [defendant] until I think two weeks later. So therefore -- and that is when he told his superiors about this incident. I believe defense theory is he fabricated this or made this up at that time because he was angry with [defendant] about being let off and about maybe losing his position as an intern, and therefore that's why he told his superiors this. [¶] That's why this prior consistent statement is a valid prior consistent statement because it was made before any layoff or any relief from shifts happened, before there was a motive to lie or fabricate a story at this time."

Defendant argues on appeal that Morris's prior consistent statement was inadmissible because "there is no evidence that the statement allegedly made to [R.B.] was made before Morris's relationship with [defendant] soured." We disagree. Because Morris worked shifts that spanned more than one day, the evidence could have referred to when Morris got home from the shift when the ambulance incident occurred, and that is how the trial court interpreted the evidence. Therefore, the record supports the trial court's conclusion that the statement was made before Morris had a motive to fabricate.

9

The trial court did not abuse its discretion in overruling the defense objection to the prior consistent statement.

IV

Defendant further claims there was insufficient evidence to sustain the conviction for a violation of section 243.4, subdivision (e)(1) [misdemeanor sexual battery] because the touching was not for the purpose of sexual arousal, sexual gratification, or sexual abuse.

"Any person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery . . . ." (§ 243.4, subd. (e)(1).)

Here, defendant brought Morris's attention to Doe's breasts, reached into her shirt, grabbed her breast, exposed it, and made a lewd comment. This is sufficient evidence that defendant committed the touching for the specific purpose of sexual gratification. Defendant disagrees, stating: "The touching was extremely brief. Doe did not testify that she felt pain as if the breast was forcibly squeezed. There was no evidence of caressing. There was no evidence that the touching was prolonged or of any attempt to prolong the contact. [Citation.] While the touching was not in a public place, it was done in the presence of another person." This may have been an argument to present to the jury, but it is entirely insufficient to support a sufficiency-of-the-evidence contention on appeal.

Defendant relies on *In re Jerry M.* (1997) 59 Cal.App.4th 289, in which the Court of Appeal held that the 11-year-old juvenile did not touch the victims' breasts for the purpose of sexual arousal and therefore the evidence was not sufficient to sustain a finding he violated section 288, subdivision (a). (*In re Jerry M.,* at pp. 299-300.) That case is inapposite for a variety of reasons, however, not the least of which is that defendant here was not pre-pubescent at the time of the offense. (See *id*. at p. 300.)

10

The evidence was sufficient to support a conviction for violation of section 243.4, subdivision (e)(1).[4]

## V

The trial court ordered defendant to register as a sex offender for 10 years under section 290. The prosecutor objected that the statute required lifetime registration, but the trial court believed only 10 years was required. Before the amendment to section 290, defendant contended on appeal that the trial court erred by requiring sex offender registration at all. However, defendant now appears to agree that sex offender registration is subject to section 290, as amended, as the trial court noted on limited remand. We therefore need not address defendant's contention.

## VI

Defendant contends we must order correction of the written probation order to conform to the oral pronouncement. The Attorney General agrees.

In the trial court's oral pronouncement of judgment, it placed defendant on probation for five years for the felony assault conviction (count one), with a condition that he serve 180 days in county jail. As to the conviction for misdemeanor sexual battery (count two), the trial court did not mention probation. Instead, it imposed a concurrent 90 days in county jail.

In the minute order and probation order, the trial court indicated a grant of probation, but it did not specify that probation was imposed only as to the felony assault conviction. On limited remand, the trial court clarified that it did not order probation for the misdemeanor conviction; however, we are unaware of any amendment to the written probation order reflecting that clarification. Therefore, the trial court must correct and

---

[4] Because we conclude the evidence was sufficient to support a finding that the touching was for sexual gratification, we need not consider whether it was also for sexual arousal or abuse.

11

amend the probation order, to the extent necessary, to conform to the oral pronouncement of sentence and the clarifications and changes articulated by the trial court on limited remand. (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 386 [minutes must be corrected to reflect oral pronouncement].)

DISPOSITION

The judgment is affirmed. The trial court is directed to correct and amend the probation order, to the extent necessary, to conform to the oral pronouncement of sentence and the clarifications and changes articulated by the trial court on limited remand.

/S/
MAURO, J.

We concur:

/S/
RAYE, P. J.

/S/
BLEASE, J.